UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELIZABETH STARKEY

                          Plaintiff,

vs.

FIRSTSOURCE ADVANTAGE, LLC

                          Defendant.

**DEFENDANT'S
LOCAL RULE 56.1(a)
STATEMENT OF FACTS**

Civil Case No. 07-cv-00662

      The defendant, Firstsource Advantage, LLC ("Firstsource"), respectfully submits this Statement of Facts pursuant to Local Rule 56.1(a) of the Local Rules of Civil Procedure of the Western District of New York.

      1.      Plaintiff's claim against Firstsource arises out of an alleged violation of the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Action ("TCPA").  **Appendix Exhibit A** at p. 1.

      2.      Plaintiff alleges that after defaulting on the subject debt, she began receiving collection calls (approximately 40 calls total).   Plaintiff further alleges that she informed defendant that she could not pay the debt, that they were calling her cellular telephone, and verbally requested that they place no further telephone calls to her cellular telephone.  **Appendix Exhibit A** at p. 3.

      3.      The Time Warner Cable ("Time Warner") billing records received from Adelphia Cable ("Adelphia") reveal that Elizabeth Starkey signed up for and activated a cable television account with Adelphia sometime prior to August 1, 2006.  **Appendix Exhibit B** at ¶ 4.

4.      On August 1, 2006, Time Warner became a successor-in-interest to Adelphia in providing cable services to the Greater Buffalo area.  **Appendix Exhibit B** at ¶ 5.

5.      The billing records further reveal that the cable account subsequently went into default.  **Appendix Exhibit B** at ¶ 6.

6.      Due to the default in payment, Time Warner commenced its own internal collection efforts on the account.  **Appendix Exhibit B** at ¶ 7.

7.      The contact information in Time Warner's possession, including contact telephone number, (716) 984-3012, would have been information provided by Elizabeth Starkey.  **Appendix Exhibit B** at ¶¶ 8, 9 and 11.

8.      Neither Adelphia nor Time Warner would perform their own investigation or research in an attempt to locate a customer's contact information.  Both companies exclusively used contact information provided by their customers.  **Appendix Exhibit B** at ¶ 10.

9.      Following Time Warner's failed attempts to collect the subject debt, the file was turned over to Firstsource for collection in January 2007.  Time Warner provided to Firstsource the contact information, including telephone number, that was provided by Elizabeth Starkey.  **Appendix Exhibit B** at ¶ 11; see also, **Appendix Exhibit C** at ¶ 4.

10.     While the Complaint alleges that the collection calls by defendant commenced in September 2006, Ms. Starkey admitted at her deposition that the calls may have in fact started in January 2007, as reflected in the Firstsource Account Notes.  **Appendix Exhibit D** at pp. 28-29.

11.     When Firstsource opened its account, it began placing calls to the (716) 984-3012 telephone number provided by Elizabeth Starkey.  **Appendix Exhibit C** at ¶ 5.

12.     The (716) 984-3012 number was Ms. Starkey's cellular telephone number.  **Appendix Exhibit D** at p. 8.

13.     Prior to March 2006, Ms. Starkey had been residing on Main Street in Hamburg. When she moved to 5408 South Maelou Drive in Hamburg, New York, she continued cable services for approximately on month.  **Appendix Exhibit D** at pp. 23-24.

14.     At the time she moved, Ms. Starkey had a balance owing for cable services for her old address.  **Appendix Exhibit D** at pp. 22-23.

15.     Ms. Starkey testified that when she originally activated cable services, she provided Adelphia with a contact number of (716) 984-3012, her cellular telephone number. **Appendix Exhibit D** at p. 24.

16.     Additionally, Ms. Starkey testified that she would use her cellular telephone number as her contact number for utilities and as her primary contact number in general. **Appendix Exhibit D** at pp. 24-25.

17.     When Ms. Starkey applied for cable services, she did not have a residential phone number.  **Appendix Exhibit D** at pp. 34-35.

18.     The calls placed to the subject phone number would have been made via live operator and automated dialing systems.  **Appendix Exhibit C** at ¶ 6.

19.     Firstsource utilized two automated dialer devices, a predictive dialer (which goes through Firstsource's own dialer process) and SoundBite (which is a hosted automated dialer from a third-party vendor).  **Appendix Exhibit C** at ¶ 7; see also, **Appendix Exhibit E** at p. 29.

20.     The first automated call to the (716) 984-3012 number was on January 9, 2007. **Appendix Exhibit C** at ¶ 9.

21.     After receiving approximately ten automated calls, Ms. Starkey returned the call and spoke to a live operator in an attempt to schedule a payment plan.  However, she believed

that a payment plan could not be set since Firstsource was requesting payments of more than she could afford.  **Appendix Exhibit D** at pp. 16-18.

22.    The Firstsource account notes exhibit that this conversation occurred on March 26, 2007.  **Appendix Exhibit C** at ¶ 12.

23.    Ms. Starkey alleges that during the first live conversation, she requested that Firstsource not call her back and that she would call them when she was able to pay the debt.  **Appendix Exhibit D** at pp. 16-17.  However, the Account Notes do not show that such a request was made by Ms. Starkey.  **Appendix Exhibit C** at ¶ 13.

24.    Additionally, at no time did Ms. Starkey ever send a letter requesting that Firstsource stop calling.  **Appendix Exhibit D** at p. 22; see also, **Appendix Exhibit C** at ¶ 16.

25.    Following the initial live contact with the Firstsource representative, the collection calls continued.  **Appendix Exhibit C** at ¶ 14.

26.    When Ms. Starkey next spoke to a live representative from Firstsource who had called her, she informed the caller that she was not available.  **Appendix Exhibit D** at pp. 18-19.

27.    In May of 2007, Ms. Starkey initiated a call to Firstsource where she set up a payment plan to pay the debt in full.  **Appendix Exhibit D** at pp. 20-21; see also, **Appendix Exhibit C** at ¶ 14.

28.    The Firstsource Account Notes show that this call was placed by Ms. Starkey on May 22, 2007 and that no further collection calls were placed to her after that date.  **Appendix Exhibit C** at ¶¶ 14 and 15.

29.    In the fall of 2006 through approximately May 2007, Ms. Starkey was also receiving collection calls from Solomon & Solomon for a debt she owed to National Fuel.  **Appendix Exhibit D** at pp. 30-31.

4

DATED:      Buffalo, New York
              August  14, 2009

                                   COLUCCI & GALLAHER, P.C.


                          By:    /s/ Jason A. Botticelli
                               Jason A. Botticelli, Esq.
                               James J. Greco, Esq.
                               *Attorneys for Defendant*
                               2000 Liberty Building
                               424 Main Street
                               Buffalo, New York 14202
                               (716) 853-4080
                               jbotticelli@colucci-gallaher.com


TO:     Kenneth R. Hiller, Esq.
        LAW OFFICES OF KENNETH HILLER
        *Attorneys for Plaintiff*
        6000 N. Bailey Avenue, Suite 1A
        Amherst, New York 14226
        (716) 564-3288
        khiller@kennethhiller.com