UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH M. STARKEY,

                    Plaintiff,

v.                                                                        07-CV-662A(Sr)

FIRSTSOURCE ADVANTAGE, LLC,

                    Defendant.
_____


## REPORT, RECOMMENDATION AND ORDER

           This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #4


           Currently before the Court is defendant's motion for summary judgment

dismissing plaintiff's complaint, which alleges violations of the Fair Debt Collection

Practices Act ("FDCPA"), § 1692, *et seq*., and the Telephone Consumer Protection Act

of 1991 ("TCPA").  Dkt. #26.  For the following reasons, it is recommended that

defendant's motion be granted.


## BACKGROUND

           Sometime prior to August 1, 2006, plaintiff signed up for and activated a

cable television account with Adelphia Cable.  Dkt. #33-2, ¶ 3; Dkt. #31, ¶ 3.  On or

about August 1, 2006, Time Warner became a successor-in-interest to Adelphia in providing cable services in the Buffalo, New York area.  Dkt. #33-2, ¶ 4; Dkt. #31, ¶ 4. Time Warner's billing records reflect that the account went into default and as a result, Time Warner commenced its own internal collection efforts on the account.  Dkt. #33-2, ¶¶ 5-6; Dkt. #31, ¶¶ 5-6.  At the time she activated cable services, plaintiff provided to Adelphia (thereafter, Time Warner) her cellular telephone number in connection with the account.  Dkt. #33-2, ¶¶ 7 and 15; Dkt. #31, ¶¶ 7 and 15.  Moreover, plaintiff does not dispute that because she provided her cellular telephone number, she "gave Defendant consent to call her cellular telephone when she signed up for [sic] with Adelphia for cable services."  Dkt. #28, p.1.  Following Time Warner's failed attempts to internally collect the debt, the file was turned over to defendant Firstsource Advantage LLC for collection in or about January 2007.  Dkt. #33-2, ¶ 9; Dkt. #31, ¶ 9.

Time Warner provided to defendant the contact information, including telephone number, that was provided by plaintiff.  Dkt. #33-2, ¶ 9; Dkt. #31, ¶ 9.  It is undisputed that the phone number plaintiff provided to Adelphia (thereafter, Time Warner) was her cellular telephone number.  Dkt. #33-2, ¶¶ 11-12; Dkt. #31, ¶¶ 11-12. The calls from defendant to plaintiff's cellular telephone were made via live operator and two automated dialing systems, a predictive dialer and SoundBite, used by defendant.  Dkt. #33-2, ¶¶ 18-19; Dkt. #31, ¶¶ 18-19.  The first automated call to plaintiff's cellular telephone phone was on January 9, 2007.  Dkt. #33-2, ¶ 20; Dkt. #31, ¶ 20.  After receiving approximately ten automated calls, plaintiff returned the call on March 26, 2007 and spoke to a live operator in an attempt to schedule a payment plan.

Dkt. #33-2, ¶¶ 21-22; Dkt. #31, ¶¶ 21-22.  In opposition to defendant's motion for summary judgment, plaintiff claims that she asked the defendant to stop calling her after her first telephone conversation with defendant on or about March 26, 2007.  Dkt. #28-8, ¶ 3.  However, defendant's account notes do not reflect that such a request was made by plaintiff.  Dkt. #33-2, ¶ 23.

It is undisputed that at no time did plaintiff ever send a letter to defendant requesting that the debt collection calls stop.  Dkt. #33-2, ¶ 24; Dkt. #31, ¶ 24.  It is also undisputed that after the first live contact with a Firstsource representative, the debt collection calls to plaintiff continued.  Dkt. #33-2, ¶ 25; Dkt. #31, ¶ 25.  Indeed, plaintiff states, "[t]o be more specific, the Defendant's activity log shows that at least 6, and up to 14 calls were made to Plaintiff by Defendant using voice recorded messages after March 26, 2007."  Dkt. #31, ¶ 25.  On May 22, 2007, plaintiff initiated a call to defendant where she setup a payment plan to pay the debt in full.  Dkt. #33-2, ¶¶ 27-28; Dkt. #31, ¶¶ 27-28.  Following the May 22, 2007 call initiated by plaintiff, no further debt collection calls were placed to plaintiff.  Dkt. #33-2, ¶ 28; Dkt. #31, ¶ 28.  On or about October 4, 2007, plaintiff commenced this action against Firstsource Advantage LLC alleging violations of the Fair Debt Collection Practices Act, Title 15, United States Code, Section 1692, *et seq*. and the Telephone Consumer Protection Act of 1991, as codified in section 227 of the Communications Act of 1934.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party

seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to

a motion for summary judgment "shall be made on personal knowledge, shall set forth

such facts as would be admissible in evidence, and shall show affirmatively that the

affiant is competent to testify to the matters stated therein."  Thus, affidavits "must be

admissible themselves or must contain evidence that will be presented in an admissible

form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 324 (1986); *see also H. Sand & Co., Inc. v. Airtemp Corp.*, 934

F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if

testified to at trial may not properly be set forth in an affidavit).  The Supreme Court in

holding that the clear and convincing standard of proof should be taken into account in

ruling on summary judgment motions was not intended to "denigrate the role of the jury

... and [ ] by no means [did it] authorize[ ] a trial on affidavits."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).  To the contrary, "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge ...." *Id*.   Indeed, "the evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor." *Id*.


**Telephone Consumer Protection Act of 1991 ("TCPA")**

"On December 20, 1991, Congress enacted the Telephone Consumer

Protection Act (TCPA), as codified in section 227 of the Communications Act of 1934,

as amended, in an effort to address a growing number of telephone marketing calls and

certain telemarketing practices Congress found to be an invasion of consumer privacy."

FCC 07-232 Declaratory Ruling, p.1 (Dkt. #33-10).   The TCPA regulates the use of

automated telephone equipment and more specifically, Title 47, United States Code,

Section 227(b)(1)(A) prohibits the use of any automatic telephone dialing system to call

any telephone number assigned to a cellular telephone service absent an emergency

purpose or the "prior express consent of the called party."   Title 47, U.S.C. §

227(b)(1)(A)(iii).   In a December 28, 2007, Declaratory Ruling, the Federal

Communications Commission, the agency responsible for enforcing the TCPA, sought

to clarify that "autodialed and prerecorded message calls to wireless numbers that are

provided by the called party to a creditor in connection with an existing debt are

permissible as calls made with the 'prior express consent' of the called party."   FCC 07-

232 Declaratory Ruling, p.1.


In its December 28, 2007 Declaratory Ruling, the FCC further found,

[a]lthough the TCPA generally prohibits autodialed calls to
wireless phones, it also provides an exception for autodialed
and prerecorded message calls for emergency purposes or

made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party, we clarify that such calls are permissible.  We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.  In the *1992 TCPA Order*, the Commission determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. ... We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed. ...  However, we agree ... that calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing.  Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'

FCC 07-232 Declaratory Ruling, pp.6-7.


**Fair Debt Collection Practices Act ("FDCPA")**

Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005), *quoting* 15 U.S.C. § 1692(e).  In her complaint, plaintiff alleges that defendant violated "multiple provisions of the FDCPA, including but not limited to the following: A. Defendant violated 15 U.S.C. § 1692c(a)(1), 15 U.S.C. § 1692c(c), and 15

U.S.C. § 1692d by communicating with Plaintiff by telephone after her specific request that they not communicate with her in that manner.  B. That the telephone calls made by Defendant described in paragraphs 22, 23 and 24 of this complaint violated 15 U.S.C. § 1692d and 15 U.S.C. § 1692d(5)."  Dkt. #1, ¶ 27.  Absent prior consent of the consumer, Section 1692c(a)(1) of the FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.  Section 1692c(c) provides that if a consumer notifies the debt collector in writing that the consumer refuses to pay the debt or wishes the debt collector to cease further communications with the consumer, the debt collector shall not communicate further with respect to such debt.  15 U.S.C. § 1692c(c).  Section 1692d of the FDCPA further precludes a debt collector from engaging in any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  More specifically, section 1692d(5) states that "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is also a violation of section 1692d.

       As a threshold matter, the facts relevant to the issues before this Court are not in dispute.  This is a debt collection case, not a telemarketing case.  At the time she activated cable services, plaintiff provided to Adelphia (thereafter, Time Warner) her cellular telephone number in connection with the account.  Dkt. #33-2, ¶¶ 7 and 15; Dkt. #31, ¶¶ 7 and 15.  Moreover, by reason or the foregoing, plaintiff does not dispute

that she "gave Defendant consent to call her cellular telephone when she signed up for [sic] with Adelphia for cable services." Dkt. #28, p.1.  It is also undisputed that plaintiff's Adelphia (thereafter, Time Warner) account went into default and thereafter, Time Warner commenced its own internal collection efforts on the account.  Dkt. #33-2, ¶¶ 5-6; Dkt. #31, ¶¶ 5-6.  Following Time Warner's failed attempts to internally collect the debt, plaintiff does not dispute that the file was turned over to defendant for collection in or about January 2007.  Dkt. #33-2, ¶ 9; Dkt. #31, ¶ 9.

Plaintiff admits that the first automated call to her cellular telephone was on January 9, 2007.  Dkt. #33-2, ¶ 20; Dkt. #31, ¶ 20.  After receiving approximately ten automated calls, plaintiff returned the call on March 26, 2007 and spoke to a live operator in an attempt to schedule a payment plan.  Dkt. #33-2, ¶¶ 21-22; Dkt. #31, ¶¶ 21-22.  It is undisputed that at no time did plaintiff ever send a letter to defendant requesting that the debt collection calls stop.  Dkt. #33-2, ¶ 24; Dkt. #31, ¶ 24.  However, in opposition to defendant's motion for summary judgment, plaintiff claims that she asked the defendant to stop calling her after her first telephone conversation with defendant on or about March 26, 2007.  Dkt. #28-8, ¶ 3.  In response, defendant states that its' account notes do not reflect that such a request was ever made by plaintiff.  Dkt. #33-2, ¶ 23.  It is irrelevant whether plaintiff made a verbal request to defendant to cease the debt collection calls, the statute explicitly provides for notice in writing and such notice, in writing, was never provided.  Therefore, the debt collection calls continued even after her March 26, 2007 conversation with defendant wherein she claims to have requested the calls to cease because her verbal request was insufficient

under the statute.   Dkt. #33-2, ¶ 25; Dkt. #31, ¶ 25.  In opposition to defendant's motion for summary judgment, plaintiff submits that for the period March 26, 2007 to May 22, 2007, between 6 and 14 calls were made to her using voice recorded messages by the defendant.  Dkt. #28-4, ¶ 12.  Finally, it is also undisputed that on May 22, 2007, plaintiff initiated a call to defendant where she setup a payment plan to pay the debt in full.  Dkt. #33-2, ¶¶ 27-28; Dkt. #31, ¶¶ 27-28.  Following the May 22, 2007 call initiated by plaintiff, no further debt collection calls were placed to plaintiff.  Dkt. #33-2, ¶ 28; Dkt. #31, ¶ 28.

Plaintiff alleges that the debt collection calls placed by defendant to her cellular telephone to collect a debt she admittedly owed to Time Warner violated the TCPA and the FDCPA.  Moreover, plaintiff claims that she verbally revoked her consent to receive those calls on or about March 26, 2007.  As discussed above, the TCPA was enacted by Congress in an effort to address the growing number of telemarketing calls and certain telemarketing practices.  In part, the TCPA also addresses, in general, the use of an automated dialing system to call cellular telephones absent consent from the consumer.  However, as clearly stated in the December 28, 2007 FCC Declaratory Ruling, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on "telephone solicitations."  The FDCPA, not the TCPA, was enacted by Congress to, *inter alia*, eliminate abusive debt collection practices by debt collectors.

Because plaintiff readily admits that she did not notify defendant in writing that she wished the defendant to cease further communication with her and because plaintiff does not allege that the calls she received were at an unusual time or place or a time or place known or which should be known to be inconvenient to the consumer, plaintiff's only claim is that the defendant intentionally engaged in conduct the natural consequence of which is to harass, oppress or abuse in violation of the FDCPA.  With the exception of plaintiff's conclusory statement that she found the debt collection calls to be inconvenient because they interrupted her day and that she found the calls upsetting, there is absolutely nothing in the record before this Court to support such a claim.  Dkt. #28-8, ¶ 5.  Indeed, in opposition to defendant's motion for summary judgment, plaintiff calculates, based on the deposition testimony, that as few as 6 and as many as 14 calls were made to her using voice recorded messages between March 26, 2007 and May 22, 2007.  Dkt. #28-4, ¶ 12.  Plaintiff's opposition to the instant motion for summary judgment fails to identify any evidence to support her conclusion that defendant's legitimate efforts to collect a debt she admittedly owed by calling the telephone number she provided were intended to harass, oppress, or abuse her in any way.  Moreover, plaintiff offers no legal basis for this Court to conclude that as few as 6 or as many as 14 calls in a two month period to pursue a legitimate debt, without more, are *per se* in violation of the FDCPA.

With respect to plaintiff's claim that defendant's calls to her cellular telephone violated the TCPA, plaintiff once again relies on her assertion that on March 26, 2007, she made a verbal request for the calls to cease.  There is nothing in either

the TCPA or the FCC's December 28, 2007 Declaratory Ruling to support plaintiff's claim that a verbal request is sufficient to cease legitimate debt collection efforts.  As discussed above, the TCPA was enacted by Congress to address telemarketing calls and telemarketing practices and the FDCPA was enacted to address debt collection practices.  However, as noted above the FDCPA requires written notice to cease debt collection efforts which plaintiff readily admits she did not provide to defendant. Although the TCPA has some application to the instant case insofar as defendant was placing prerecorded automated calls to plaintiff's cellular telephone,  Congress has clearly stated that debt collection efforts are governed by the FDCPA.  Thus, plaintiff's attempt to infer that a verbal request to cease debt collection calls is sufficient under the TCPA and that any subsequent calls are in violation of the TCPA misses the mark.  To cease debt collection calls, written notice is required.  To the extent plaintiff wants to challenge the FCC's December 28, 2007 Declaratory Ruling addressing prior express consent, the proper vehicle to make such a challenge is to file a petition for review of the FCC's final order in the Court of Appeals naming the United States as a party.  *See Leckler v. Cashcall, Inc.*, No. C 07-04002 SI, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008).

        Accordingly, for the foregoing reasons, this Court finds that plaintiff has failed to raise a genuine issue of material fact with respect to her TCPA and FDCPA claims sufficient to defeat the instant motion for summary judgment.  It is therefore recommended that defendant's motion for summary judgment be granted.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to**

-13-

**comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to**

**consider the objection.**


DATED:      Buffalo, New York
            March 11, 2010


                              s/ H. Kenneth Schroeder, Jr.
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**